Filed 8/16/21  In re Jaylen F. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re JAYLEN F., A Person Coming Under the Juvenile Court Law. | B311399 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.G., <br><br> Defendant and Appellant. | Los Angeles County Super. Ct. No. 18CCJP00780B |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle Blackwell, Temporary Judge. Affirmed.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

T.G. (mother) appeals from the juvenile court's order terminating her parental rights to nine-year old Jaylen F. under Welfare and Institutions Code[1] section 366.26. She does not contest the merits of the court's decision. Instead, mother argues the Department of Children and Family Services (Department) did not satisfy its duty of further inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) because it failed to ask her maternal great aunt about Jaylen's possible Native American ancestry. We affirm.

# BACKGROUND

An abridged statement of facts is presented because this appeal is limited to a single issue regarding compliance with ICWA.

Mother has four children: Teanna born in 2002; Dylan born in 2007; Aaliyah born in 2008; and Jaylen born in 2012. All four children have different fathers. J.F. (father) is Jaylen's father. Only Jaylen is the subject of this appeal; father did not challenge the termination of his parental rights to Jaylen.

## 1. Prior Dependency Proceedings

Since 2004, mother has been involved in numerous dependency proceedings pertaining to Teanna, Dylan, and Aaliyah based on substantiated allegations of drug abuse, physical abuse, emotional abuse, caretaker absence, mental health problems, and general neglect. For example, in 2004

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

Teanna was detained from mother and declared a dependent of the court due to mother's drug use at the time of the child's birth and mother's severe anger management problems. As another example, in 2010 Dylan and Aaliyah were detained from mother and declared dependents of the court due to mother's auditory hallucinations and psychiatric hospitalization. Ultimately, mother's reunification efforts with these children were not successful. The court ordered Teanna into a permanent plan of legal guardianship. Mother's parental rights to Dylan were terminated and mother never reunified with Aaliyah.

### 2. Dependency Proceedings Involving Jaylen and Compliance with ICWA

In May 2014, Jaylen was detained from mother. The following month, the court declared Jaylen a dependent. In August 2015, the court terminated jurisdiction over Jaylen with a custody order granting sole legal and physical custody to mother. In February 2017, Jaylen was detained from mother and father. Two months later, Jaylen was returned to his parents' custody and jurisdiction was terminated.

On February 4, 2018, the family came to the Department's attention again after mother was arrested for trying to gouge out father's eyes and smother him with a blanket while Jaylen and Aaliyah were nearby. In response to mother's arrest, the Department initiated this action by filing a petition under section 300, subdivisions (a) and (b) on behalf of Jaylen and Aaliyah. According to the ICWA-010(A) forms attached to the petition, on February 5, 2018 mother told a Department social worker that Jaylen and Aaliyah have no known Indian ancestry. The February 7, 2018 detention report confirms that ICWA does not apply, and states that when mother was asked about Indian

3

ancestry she indicated that "there is no ICWA status on the family." Further, based on the Department's review of the CWS/CMS database, on August 16, 2010 another juvenile court found that ICWA did not apply to mother.

At the February 8, 2018 detention hearing, mother and father appeared and were appointed counsel. Mother's counsel stated, "Your Honor, I believe ICWA findings were made already previously for the children Aaliyah and Jaylen. I wasn't sure if the court required them but I can fill [the ICWA-020 forms] out after the hearing." The court replied it needed the forms filled out again for mother. The following discussion then took place between the court and mother:

> Court: "For mother, do you have any Native American Indian ancestry, ma'am?"
> Mother: "Yes, I do."
> Court: "What is the tribe?"
> Mother: "I haven't [done] my research yet and got on ancestry.com."
> Court: "Oh, how do you know?"
> Mother: "History of my grandparents and grandmother."
> Court: "What is the name of the tribe?"
> Mother: "I just told you I don't know. I can't tell you specifically."
> Court: "Tribes are entitled to receive notice when children are detained, so we need to have a name of a tribe in order to have notice. Do you have contact information?"
> Mother: "I'll definitely get it for you."

Mother's counsel informed the court he could provide mother with the ICWA-020 form to fill out. Mother replied, "Do I got it in my blood? We need that?" The court responded that "at

4

this time" it would defer ICWA findings as to Jaylen regarding mother and noted father had no Indian heritage. While the court was making its detention findings, mother stated, "I'm walking out." The court ordered the children detained under the Department's supervision with monitored visitation for the parents. The court also ordered the Department to "further interview the mother regarding the ICWA issue."

After the February 8, 2018 hearing, father and mother filed their ICWA-020 forms. Father checked the box next to "I have no Indian ancestry as far as I know." Mother checked the box next to "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe." Mother did not, however, identify a tribe or provide the name and contact information of any relative. In addition, mother did not check the box indicating that one or more of her parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe.

On March 27, 2018, a dependency investigator (DI) called mother to discuss her claim of possible Indian ancestry. The DI began the telephone interview by asking mother about her claim of possible Indian ancestry to which mother replied she had Native American ancestry. When asked if she knew the name of the tribe, mother stated there was supposed to be an investigation regarding her heritage and it was not her job to do the investigation. After the DI tried to explain the process of investigating a parent's claim of Native American ancestry, mother denied knowing what tribe she was affiliated with. The DI then asked mother if she could provide the Department with the names of any relatives and their telephone numbers for purposes of its further investigation into her claim. At first, mother said she had the names and telephone numbers of those

relatives. But when the DI asked mother to provide the relatives' information, mother stated "not now."

Mother and father appeared with counsel at a June 13, 2018 hearing. During the hearing, the Department informed the court the investigation as to mother's claim of possible Native American heritage was still pending. The Department explained that although it tried to follow up with mother to obtain more information about a particular tribe and any relatives that could assist its investigation, mother stated she did not know if she could provide the information to the Department.

During the June 13, 2018 hearing, the court asked mother's counsel whether he had ICWA information "[b]ecause my understanding of this is that the mother is making contrary statements." Mother's counsel responded that mother indicated the social worker never approached her or never asked her for any information. The court replied, "All right. I'm going to make a finding that this child [Aaliyah] is not an Indian child and neither is the child Jaylen. The mother filed an ICWA document [on] February 17, 2017 in [a prior] case when it was first here before it closed and she clearly marked the part of the box D, stating that she has no [Indian] ancestry, as far as she knows. Now I see that she did submit another ICWA form on February 8, 2018, a year later, checking the box that she may be a member or eligible for membership in a tribe. Yet, none of that information was ever disclosed in 2017. And a finding was made in 2017 that the mother denied Indian heritage." The court added it "will not allow parents to play fast and loose with the court by making contradictory statements in order to delay proceedings or create undue havoc on the proceedings because then [the] doctrine of disentitlement will come into play." The court stated it would

6

"maintain the previous order and findings made on February 17, 2017, based on mother's ICWA statement, which she signed under penalty of perjury under the laws of the State of California that she has no Indian heritage."

The court also determined the Department "is not required to give any further notice, because the mother has already stated she has no Indian heritage and she made that statement under penalty of perjury" and, therefore, the Department "need not further investigate this matter." The court emphasized that if any investigation were to be done, it would be a perjury investigation regarding mother telling the truth. The court's June 13, 2018 minute order states that it "does not have a reason to know that [Jaylen] is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status."

At the August 1, 2018 jurisdiction and disposition hearing, the court found jurisdiction over Jaylen and Aaliyah based upon several counts asserted in the first amended petition. As to mother, the court sustained count a-1 (history of violent altercations between mother and father), counts a-2, b-2, and j-1 (mother's physical abuse of Aaliyah), and count c-1 (mother's emotional abuse of Aaliyah). The court found that mother's testimony "is completely without merit and lacks credibility." The court declared the children dependents of the court and found the bypass provisions of section 361.5 applied because mother had inflicted severe physical abuse on Aaliyah, Jaylen witnessed the physical abuse, mother failed to reunify with Teanna and Dylan, and mother's parental rights over Dylan had been severed. The court also observed that despite the Department's extensive

7

efforts over 14 years to assist mother in providing her children with a safe home, those efforts had not helped. All the review hearing reports after August 1, 2018 stated that ICWA did not apply.

By January 2019 Jaylen was living in a foster home. On February 12, 2019, a social worker spoke with mother's maternal great aunt, Mary J., about having visits with Jaylen. She was unable to visit with Jaylen at that time, however, because she was in the process of relocating. The record does not indicate whether the social worker asked the great aunt if mother or Jaylen had Native American ancestry.

In August 2019 Jaylen was placed in the foster home of Ms. L. and Mr. C. And in September 2019 mother's great aunt withdrew her Resource Family Approval (RFA) application due to her inability to obtain a criminal waiver. Following the withdrawal of her RFA application, the great aunt stopped visiting Jaylen and no longer had any contact with the child. Shortly thereafter, the Department recommended Jaylen receive permanent placement services while receiving adoptive planning in his current placement with Ms. L. and Mr. C. Jaylen continued doing well in their home and Ms. L. and Mr. C. remained committed to adopting him. He got along well with their family and did well in school. Due to COVID-19 restrictions, mother had inconsistent monitored visits with Jaylen; her most recent visit was in November 2020.

After multiple continuances, the court held the contested section 366.26 hearing on March 22, 2021. At the beginning of the hearing, mother's counsel informed the court that mother, who was present, suggested she wanted to discharge him and represent herself because she considered him racist,

unprofessional, "and a host other things." The court responded that mother had been very recalcitrant in the past, counsel had been very thorough, and this was "simply another ruse" on mother's part to delay the termination of her parental rights. The court emphasized that mother "has repeatedly engaged in efforts that tend to sabotage Jaylen's placement."

During the hearing, mother accused the Department of not liking her and being racist. As for the court, mother said "the judge needs to be investigated because she's lying under her own oath in the United States, California, in the judicial system." Regarding mother's purported Indian heritage, mother reminded the court it "wouldn't believe a word I said. Two years ago you said you [were] going to find me unbelievable because I told you I had Indian in my heritage." At the end of the hearing the court found by clear and convincing evidence that Jaylen was adoptable, no exception to adoption applied, and terminated mother's and father's parental rights. The court also designated Ms. L. and Mr. C. as Jaylen's prospective adoptive parents. Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends the order terminating her parental rights must be reversed because the Department should have further inquired of mother's great aunt about Jaylen's possible Indian heritage. We disagree.

### 1. Applicable Law and Standard of Review

"The section 366.26 hearing is a critical late stage in a dependency proceeding. The child has been under juvenile court jurisdiction for an extended period following the dispositional order, and the court has held one or more review hearings to

9

consider a return to parental custody. [Citation.] At the section 366.26 hearing, the focus shifts away from family reunification and toward the selection and implementation of a permanent plan for the child. [Citation.] … If adoption is likely, the court is required to terminate parental rights, unless specified circumstances compel a finding that termination would be detrimental to the child." (*In re S.B.* (2009) 46 Cal.4th 529, 532.)

"ICWA reflects 'a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court … must follow before removing an Indian child from his or her family.' [Citation.] Both ICWA and the Welfare and Institutions Code define an 'Indian child' as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' " (*In re D.F.* (2020) 55 Cal.App.5th 558, 565, fn. omitted (*D.F.*).)

A juvenile court has an affirmative and continuing duty to determine whether ICWA applies to a child's dependency proceedings. (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).) Although the record must show the court considered the issue, the court's finding about whether ICWA applies may be express or implied. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.)

The duties imposed by ICWA on the juvenile court and the county welfare agency can be separated into three phases: (1) a duty to inquire, (2) a duty of further inquiry, and (3) a duty to provide ICWA notice. (*D.F., supra*, 55 Cal.App.5th at p. 566.) The initial duty to inquire "includes, but is not limited to, asking the

10

child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) In addition to the initial duty of inquiry, a duty of further inquiry arises if the court or social worker "has reason to believe that an Indian child is involved in a proceeding." (*Id.*, subd. (e).) This duty of further inquiry includes interviewing parents and extended family members to gather certain information, contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child might be a member or be eligible for membership, and "[c]ontacting the tribe or tribes and any other person [who] may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (*Id.*, subd. (e)(1)–(2); see Cal. Rules of Court, rule 5.481(a)(4) [same requirements].) Once the court or social worker "knows or has reason to know" that an Indian child is involved in the dependency proceedings, California law requires notice pursuant to ICWA be given to the parent, legal guardian, Indian custodian, and the child's tribe. (§ 224.3, subd. (a); see Cal. Rules of Court, rule 5.481(c)(1) [notice is required "[i]f it is known or there is reason to know [that] an Indian child is involved in a proceeding listed in rule 5.480"].)

When the facts are undisputed, the appellate court independently reviews whether the requirements of ICWA have been satisfied. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) The appellate court reviews the juvenile court's ICWA findings under the substantial evidence test and determines whether the juvenile court's order is supported by "reasonable, credible

11

evidence of solid value." (*Ibid.*) The juvenile court's orders and findings must be upheld if any substantial evidence, contradicted or uncontradicted, supports them, and all conflicts in the evidence must be resolved in favor of affirmance. (*Ibid.*)

2. **The juvenile court and the Department satisfied their ICWA inquiry obligations.**

At the February 8, 2018 detention hearing, mother told the court she had Native American ancestry but could not identify a tribe or the name and contact information of any relatives who could provide that information. In addition, on her ICWA-020 form mother checked the box next to "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe" but did not identify a tribe or provide the name and contact information of any relative. Based on mother's statements, the court deferred making ICWA findings and ordered the Department to interview mother regarding ICWA. By doing so, the court concluded, in effect, that the information provided by mother had triggered the duty of further inquiry.

Citing *In re Austin J.* (2020) 47 Cal.App.5th 870, the Department argues mother's vague and evasive statements that she may have Indian ancestry did not trigger a duty of further inquiry. In *Austin J.*, the Court of Appeal concluded that statements by the mother, both orally and on her ICWA-020 form, that she may have Cherokee ancestry, and similar statements by the maternal aunt, did not trigger the duty of further inquiry. (*Id.* at pp. 888–889.) The court held: "[T]he fact disclosed through the social worker's initial inquiry regarding the possibility that the children are Indian children—that Mother may have Cherokee ancestry—is insufficient by itself to provide a reason to believe that either the children or their parents are

12

members of, or eligible for membership in, an Indian tribe. Therefore, the statute imposed no duty to make further inquiry." (*Id.* at p. 889.)

In *In re T.G.* (2020) 58 Cal.App.5th 275 the Court of Appeal disagreed with *Austin J.*'s conclusion that a mere possibility of Indian ancestry was not enough to trigger the duty of further inquiry. (*T.G.,* at p. 294.) The *T.G.* court concluded the phrase "reason to believe" must be interpreted broadly such that a parent's affirmative statement of Indian ancestry alone constitutes a reason to believe an Indian child may be involved and triggers the duty of further inquiry. (*Id.* at pp. 294–297.)

We need not weigh in on the conflict between *Austin J.* and *T.G.* because the juvenile court in this case directed the Department to conduct an ICWA inquiry and, we conclude, the Department satisfied its duty of further inquiry.

The first time anyone suggested mother or Jaylen had Indian ancestry was mother's off-handed comment at the February 2018 detention hearing that mother thought she had Native American Indian ancestry based on her grandparents' background. But that comment was followed by mother's statement that she did not know the name of the tribe and would provide the court with contact information at another time. And mother's subsequently filed ICWA-020 form provided no facts to support her claim of possible Indian ancestry. For his part, father reported having no known Indian ancestry.

On March 27, 2018, a Department investigator called mother to discuss her claim of possible Indian ancestry. When asked if she knew the name of the tribe, mother did not know what tribe she was affiliated with and stated it was not her job to do the investigation. The investigator then asked mother if she

13

could provide the Department with the names of any relatives and their telephone numbers for purposes of its further investigation into her claim. Mother initially indicated she had the names and telephone numbers of relatives. When pressed by the investigator to provide the names and telephone numbers of those relatives, however, mother stated " 'not now.' "

Moreover, during the June 13, 2018 hearing, the Department informed the court that although it tried to follow up with mother to obtain more information about a particular tribe and any relatives that could assist its investigation, mother did not know if she could provide the information to the Department. Mother and her attorney attended the June 13 hearing, and neither suggested mother had any additional information on possible Indian ancestry. There is also no indication in the record that mother provided the Department additional information about her possible Indian heritage at a subsequent hearing, or during a subsequent conversation with a Department social worker or investigator.

To be sure, mother contends that at some point after the June 13, 2018 hearing, the Department had reason to know or believe Jaylen was an Indian child and it failed to ask mother's great aunt about the child's possible Native American ancestry. We have several responses to this argument. First, as mother acknowledges, great aunts are not considered "extended family members" under ICWA. Thus, the duty to further inquire under ICWA did not extend to mother's great aunt and, in any event, there is no basis to conclude she had any information about mother's or Jaylen's possible Indian ancestry. (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053; 25 U.S.C. § 1903(2); § 224.1, subd. (c).)

14

Second, on June 13, 2018 the court made an express finding that mother's claim of Indian ancestry was not credible and this finding is supported by substantial evidence. (See *In re N.M.* (2008) 161 Cal.App.4th 253, 261–262, 267 [notice not required where juvenile court found the mother's claims of tribal affiliation not credible].) The juvenile court case file contained the 2010 finding that ICWA was not applicable, as well as mother's February 17, 2017 representation in another dependency case and February 5, 2018 representation in this case that mother and Jaylen have no Indian ancestry. Mother presents no reason why the court could not reasonably rely on this evidence to make a finding ICWA does not apply. Instead, she focuses on the absence of evidence that, after June 13, 2018, the Department made any further inquiry regarding her renewed claim of Indian ancestry. Viewed either as a substantial evidence issue or as a duty of inquiry issue, mother has shown no error. The court's implicit finding made at the March 2021 section 366.26 hearing that ICWA does not apply remains supported by the court's prior June 2018 finding and mother's prior representations. At most, by March 2021 there was a conflict in the evidence concerning mother's or Jaylen's possible Indian heritage. Certainly, the court could reasonably find mother's vague assertion of possible Indian ancestry not credible when made with no supporting new information and when mother had previously admitted having no Indian ancestry. Thus, substantial evidence supports the implicit finding there was no reason to know or believe Jaylen is or may be an Indian child when the court terminated mother's parental rights in March 2021.[2]

---

[2] Because the information available to the Department after its further

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                              LAVIN, Acting P. J.


WE CONCUR:


   EGERTON, J.


   HILL, J.*

---

inquiry did not meet any of the statutory reason-to-know criteria of section 224.2, subdivision (d), the duty to give formal ICWA notice under section 224.3 never arose.

\* Judge of the Santa Barbara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.