Filed 11/1/23  In re N.W. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re N.W. et al., Persons Coming Under the Juvenile Court Law. | C097459 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2020-0000156) |
| Plaintiff and Respondent, | |
| v. | |
| D.P. et al., | |
| Defendants and Appellants. | |

A.D. (mother) and D.P. (father), the parents of minors N.W. and M.W., appeal from the juvenile court's orders terminating parental rights and freeing the minors for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  They contend the juvenile court erred

---

[1]    Undesignated section references are to the Welfare and Institutions Code.

1

in failing to find the beneficial parental relationship exception to adoption applied and that we must remand for further compliance with the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.; § 224.2.)

We will conditionally affirm subject to full compliance with the ICWA on remand, as described in this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2020, the San Joaquin County Human Services Agency (the Agency) filed a section 300 petition on behalf of minors N.W. (then age two years) and M.W. (then age nine months), after the near drowning of M.W. Mother had been intoxicated and left M.W. unsupervised in a kiddie pool. The petition further alleged that mother did not immediately seek medical attention for M.W., the parents were uncooperative with hospital personnel and social workers, mother had a substance abuse problem, the parents had a history of engaging in severe domestic violence, father lacked suitable housing, and the parents had previously left N.W. with an unsuitable caretaker. The juvenile court ordered the minors detained and took jurisdiction over them.

Mother had informed the social worker that she and father were no longer in a relationship but had agreed to co-parent the minors. Both parents had completed the "Positive Parenting Program." Mother's participation was described as satisfactory. Mother also had participated in individual counseling sessions. The parents visited the minors weekly at the foster family agency and had two additional virtual visits each week. The Agency had difficulty increasing in-person visits due to the COVID-19 pandemic. The parents were always on time for visits, maintained regular attendance, and were "always engaging and attentive to the minors' needs." There were no reported concerns about the visits.

The juvenile court adjudged the minors dependent children of the court and ordered reunification services for the parents. Mother's reunification case plan consisted of compliance with court orders, substance abuse treatment, personal counseling, and

2

parenting education.  Father's reunification case plan consisted of the completion of a psychological evaluation to tailor services, parenting education, personal counseling, and compliance with court orders.

The Agency's March 19, 2021, status report noted that father had submitted to a psychological evaluation and had been found able to demonstrate adequate functioning. Father was participating in his services.  Mother had completed her individual counseling and a Dependency Drug Court assessment, which had recommended inpatient treatment. Mother did not attend the inpatient treatment and she was terminated from drug court. The Agency recommended termination of her reunification services because she would not be able to reunify within 12 months of the minors' removal.

Although the parents represented that they were permitted to be around each other to participate in services, the social worker learned that there was an active stay-away order between the parents, requiring father to refrain from all contact with mother, which was in place until May 2023.  The social worker arranged for parents to visit the minors separately, which they attended twice weekly as scheduled.  Mother visited first, with father visiting immediately thereafter.  The parents were appropriate with the minors and engaged in age-appropriate activities.  Other than having to be repeatedly instructed to stop bringing unhealthy snacks that upset the minors' digestive systems, there were no concerns about the visits.  The Agency, however, confirmed the parents were having contact with each other in violation of the stay-away restraining order.  On April 21, 2021, the juvenile court terminated mother's reunification services.  The juvenile court continued services for father and gave the Agency discretion to lift supervision of father's visits and arrange for them to take place outside the visit center.

In its May 2021 12-month review report, the Agency recommended reunification services for father also be terminated.  The Agency reported that father had completed parenting education and an individual therapy psychological evaluation, completed over half of his domestic violence sessions, and he visited the minors regularly, but father was

3

not honest with the Agency and had refused to sign the releases for the minors to be assessed by the Valley Mountain Regional Center (VMRC), even though they had been referred back in March 2021. The Agency had moved father from in-home visits to a monitored visitation setting after he was found to be dishonest about where he was residing. He also had refused to participate in the "parent-partner" program, despite the recommendation in his psychological evaluation and the urging of the social worker. It also appeared the parents were still in a relationship and had shared activities. Father was appointed a guardian ad litem and the juvenile court continued his reunification services and ordered him to participate in the parent-partner program. It also ordered father's visits be monitored with discretion to return visits to a community setting.

In its November 2021 18-month review report, the Agency again recommended the termination of father's reunification services. Father continued to refuse to participate in the parent-partner program. The minors were placed together and doing well, but they were in a nonconcurrent foster home so the Agency noted it would need to locate an adoptive home. An earlier adoption assessment had concluded that both minors were adoptable, and an update would be ordered. M.W. was receiving VMRC services but N.W. was still waiting to be assessed.

Father did not appear at the January 25, 2022, 18-month review hearing. The Agency informed the juvenile court that father had smelled of marijuana during seven of his visits since October 2021. The juvenile court terminated father's reunification services and set a section 366.26 hearing.

The Agency filed a status report on May 2, 2022, indicating it would be requesting the termination of parental rights at the upcoming section 366.26 hearing. There had been no significant changes in the family circumstances. The parents continued to visit separately, twice a week, at the visitation center. Father's visits were monitored and mother's were supervised. The parents and minors were observed to play in age-appropriate ways during these visits. At the beginning of March 2022, the visitation

4

center called the social worker because father was attending his visits smelling of marijuana. The smell was so strong that the other visiting parents complained. The staff reported the smell lingered in the center hours after father's departure. Father did not, however, appear to be under the influence of marijuana. The social worker was able to address and resolve the issue by speaking to father. The minors were doing well in foster care and the Agency was continuing to search for a concurrent home.

The section 366.26 report, recommending the termination of parental rights, was filed on May 10, 2022. The minors were reported to be doing well and were adoptable. Regarding their relationship with the parents, the minors were reported to know who their parents are and have a relationship with them but did not have a significant bond with either of them. The caregiver did not report any struggles in behavior surrounding visits. The visitation notes indicate the minors enjoy their visits, the visits go smoothly, and they are both able to leave visits without any issues. Neither minor presented with any emotional or mental distress as a result of the separation from the parents after visits.

A supplemental report was filed on September 30, 2022, reporting that the Agency located and placed the minors in a concurrent placement on July 22, 2022. The minors had developed a healthy bond with the caregiver and the caregiver was capable and committed to adoption. The minors were jointly assessed as adoptable.

By the time of the November 15, 2022, contested section 366.26 hearing, the minors were three and five years old, and had been in foster care for two and a half years. Both parents and the social worker testified at the hearing. There was no bonding study. Mother was opposed to the termination of parental rights and believed the minors were very bonded to her. She had attended, or made up, every visit. During visits, she would play, talk, and watch shows that interested the minors. She testified M.W. often cried at the end of visits, N.W. would hold on to her phone and be sad, and they would ask her if they could go with her.

5

Father testified that he, too, had a bond with the minors, as he had provided care for them before their removal. He believed that bond continued to exist. He consistently visited twice a week and testified that the minors appeared "sad and depressed" after their initial excitement at the beginning of visits and would cry and get upset at the end of visits. He said he told the minors that they would get to return to him someday when they would ask—which was approximately three times a month. Father testified that he was unaware that the visitation monitor and transportation worker had not reported any emotional distress shown by the minors at the end of visits.

The social worker testified that the minors had not reported any concerns, did not appear sad or depressed, and had a happy demeanor. The social worker testified that the minors appeared to have a loving relationship with the parents but that the reports she received from the visits did not contain any instances in which the minors screamed or cried at the end of the visit. There was, however, a report from the transportation worker about an incident wherein father was frustrated with the minors and grabbed N.W. by the arm.

At the conclusion of testimony, the juvenile court heard argument from the parties. The juvenile court then stated that the burden fell on the parents to prove that an exception to adoption applied and that, "in applying *Caden C.*,[2] there was a need to look at the [minors] and the impact on them." The juvenile court then found that the effect of terminating parental rights did not outweigh the benefits of adoption, that the termination of parental rights was in the best interest of the minors, and that none of the exceptions to adoption applied. It found the minors adoptable and terminated parental rights.

Parents appealed. This matter was fully briefed on September 11, 2023.

Additional facts related to the ICWA issue are contained in our discussion *infra*.

---

[2] *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden. C.*).

6

DISCUSSION

I

*Beneficial Parental Relationship Exception to Adoption*

Mother contends the juvenile court erred by failing to find the beneficial parental relationship exception to adoption applied. She claims the Agency focused too heavily on an improper factor in making its recommendation and the juvenile court's finding that she does not have a beneficial relationship with the minors is not supported by substantial evidence.

Father filed a notice of joinder in mother's argument on July 5, 2023. In the notice, he requested to join in the argument made in mother's opening brief, pursuant to California Rules of Court, rule 8.200(a)(5). In the body of his notice, as well as in his reply brief, however, he also purports to apply mother's arguments, although with scant analysis of the facts, to *his* relationship with the minors—which was not argued by mother in her opening brief. In his reply brief, father also argues for the first time that the juvenile court failed to follow the guidance of *Caden C., supra*, 11 Cal.5th 614 by failing to consider or to engage in any analysis regarding whether terminating parental rights was in the minors' best interests.

Contentions raised for the first time in a reply brief, without good cause, are forfeited. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) Although the inclusion of the new argument in his notice of joinder was improper, respondent the Agency, had notice of the contention and, in fact, included a response in its respondent's brief. We will, therefore, consider father's cursory argument that his visitation and relationship with the minors met the requirements necessary to establish the exception to adoption. We will not, however, develop his argument or search the record for facts not included by father in his brief to support his claim of error. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 ["We are not required to search the record to ascertain whether it contains support for [appellant's] contentions"].) Nor

7

will we consider the new arguments father raised for the first time in his reply brief and shall consider them forfeited. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275-276 [fairness concerns militate against consideration of issues raised for the first time in a reply brief, as "consideration of the issue deprives . . . respondent of the opportunity to . . . rais[e] opposing arguments about the new issue"].)

At the section 366.26 selection and implementation hearing, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citations.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) One such circumstance is the so-called beneficial parental relationship exception. (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception]; *Caden C., supra*, 11 Cal.5th at p. 629.)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to the termination of parental rights. (*Caden C., supra*, 11 Cal.5th at pp. 636-637; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(2).) The parent "must show regular visitation and contact with the child, taking into account the extent of visitation permitted. Moreover, the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship. And the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, at p. 636.)

The beneficial parental relationship exception to adoption "must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The factual predicates of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*Caden C., supra*, 11 Cal.5th at pp. 639-640.) We do not substitute our judgment for that of the juvenile court as to what is in the child's best interests. (*Id*. at pp. 640-641.)

Here, the fact that mother and father maintained consistent visitation with the minors was undisputed. However, it is not enough for a parent to show frequent and loving contact during pleasant visits. (*In re C.F.* (2011) 193 Cal.App.4th 549, 555.) They must establish that the minors have a significant, positive, emotional attachment with them and that the harm the minors would experience if the parental relationship were terminated outweighs the benefits that would be provided by an adoptive home. (*Caden C., supra*, 11 Cal.5th at pp. 633-634.)

The parents contend that the Agency's section 366.26 report suggests the Agency based its recommendation on improper factors such as mother's failure to address her substance abuse issues and the parents' inability to adequately parent the minors. While the section 366.26 report included information about the parents' failure to remedy the concerns giving rise to jurisdiction and inability to demonstrate adequate parenting skills, the Agency did not reference this information in arguing that the beneficial parental relationship exception to adoption should not apply. Nor did the juvenile court give any indication it based its findings on such information. In fact, it expressly stated that it was focusing on applying *Caden C.* and looking at the impact termination of parental rights

9

would have on the minors. Thus, we reject the parents' suggestion that the juvenile court considered improper factors in making its findings.

Mother also contends the evidence does not support the juvenile court's finding that she does not have a beneficial relationship with the minors and therefore erred in not applying the exception. Father appears to join in this argument but with respect to *his* relationship with the minors. But it does not appear from the record that the court found the parents failed to prove the second element or that the minor would not benefit at all from continuing a relationship with them. Instead, the record shows that the court expressly found the parents had not proven the *third* element of the exception— specifically stating, "The court is [going to] find that the effect of termination of parental rights would not outweigh the benefits of adoption." The juvenile court then said it was going to proceed, found notice had been given, found the minors adoptable and no exception to apply, and terminated parental rights. Thus, we reject the parents' contention that the juvenile court erred in failing to find they did not meet their burden to prove the second element of the beneficial parental relationship exception to adoption.

Finally, to the extent father complains the juvenile court did not independently consider guardianship as an alternative, we again emphasize that the permanent plan preferred by the Legislature is adoption. If the juvenile court finds the child is adoptable at the section 366.26 selection and implementation hearing, it *must* terminate parental rights unless the parents can establish termination would be detrimental to the child *under one of the statutory exceptions.* (*Caden C., supra*, 11 Cal.5th at p. 631; *In re Ronell A., supra*, 44 Cal.App.4th at p. 1368.) Since the juvenile court found the minors adoptable and found none of the statutory exceptions to adoption applied, guardianship was not an alternative.

10

## II

### *The ICWA Compliance*

Father contends we must remand for further ICWA compliance because the Agency did not provide his complete ancestral information to the relevant tribes. In making his argument, he notes that the juvenile court failed to make a final finding on the applicability of the ICWA. Mother joins in father's argument. We agree that remand is necessary.

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)

"[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a

11

reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

Here, mother reported she did not have any Native American ancestry. Father reported, however, that both his parents had Blackfeet and Cherokee ancestry, although neither were enrolled members, and that he might be eligible for membership in one of the tribes. The Agency sent notice to the Blackfeet Tribe of Montana and three Cherokee tribes. The notice indicated father's asserted Blackfeet and Cherokee heritage, but indicated only that it came through the paternal grandmother. Although the notice also provided the name, birthdate, and address of the paternal grandfather, it did not specify that the paternal grandfather might also have Blackfeet, Cherokee, or other Indian heritage. Each of the four tribes responded that the minors were not Indian children. Two of the tribes' responses included consideration of blood quantum.

The parents contend that, although the Agency's notice to the tribes included the paternal grandfather's birthdate and address, it did not also note that he had Blackfeet and/or Cherokee heritage and, without this additional information, the tribes did not consider that heritage in their calculations of blood quantum. Parents did not, however, raise this argument in the juvenile court.

Parents' counsel were aware of the alleged deficiencies in ICWA compliance, as demonstrated by father's February 2022 writ petition which raised this identical ICWA

12

argument now raised on appeal.[2]  Nonetheless, over the course of the following 10 months, counsel did not ask that the juvenile court order the Agency to provide updated information to the tribes about the paternal grandfather.  (See § 224.2, subd. (e)(3) [contact with tribe must, at minimum, include telephone, facsimile, or email and sharing of information identified as necessary by tribe].)  While the juvenile court and the Agency are charged with making the appropriate inquiry under the ICWA, it is equally the obligation of the parents' and minors' counsel to promptly bring such matters to the attention of the juvenile court.  Counsel cannot remain idle, aware of alleged deficiencies in ICWA inquiry and notice (or concede ICWA compliance), and then complain about omissions in ICWA inquiry or notice on appeal.

The juvenile court, the Agency, and counsel involved in this case also were aware that the juvenile court had yet to make final findings on the applicability of the ICWA because this fact was noted in father's writ petition, and in our order denying the petition, in which we expressly found that the ICWA claim was premature, "as there [was] no ICWA finding at this time."  Nonetheless, the juvenile court did not make, nor did counsel request it make, final ICWA findings.

---

**2**     On our own motion, we take judicial notice of father's writ petition filed on March 14, 2022, contained in this court's file in Third District Court of Appeal case No. C095643 (case No. C095643).  (Evid. Code, §§ 452, 459.)  We note that a reviewing court may give the parties to an appeal an opportunity to comment on the propriety of judicial notice taken on the reviewing court's own motion, if the matter is of substantial consequence to the appellate opinion.  (Evid. Code, §§ 452, subd. (d) [judicial notice of court records], 459, subd. (c) [reviewing court may take judicial notice but must give parties the opportunity to comment under Evidence Code section 455 if the matter is of substantial consequence].)  The validity of taking judicial notice of the matters in case No. C095643 is clear.  However, if the parties are aggrieved by this judicial notice, we will entertain a motion for rehearing to give them an opportunity to address the matter before the decision becomes final.  (Evid. Code, § 459, subd. (d).)

" 'The notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be [forfeit]ed by the parent.' " (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435; but see *In re X.V.* (2005) 132 Cal.App.4th 794, 798 ["The purposes of the ICWA are indeed commendable, but we do not believe Congress envisioned or intended *successive* or *serial* appeals on ICWA notice issues when, given a proper objection, they could easily be resolved during proceedings on remand for the specific purpose of determining whether proper notice was given"]; *In re Z.W.* (2011) 194 Cal.App.4th 54, 63-68 ["A line has to be drawn. At some point, there must be finality to the ICWA noticing process. Balancing the minor's interest in permanency and stability against the tribes' rights under the ICWA, we draw the line in this case"].)[3] But " '[c]ounsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330.) The juvenile court did not receive such aid here, resulting in an unreasonable delay in achieving permanence for these young minors. (See, e.g., *In re Sade C.* (1996) 13 Cal.4th 952, 993 [noting "the pointed and concrete harm that the child may suffer" from prolonged proceedings]; *In re A.R.* (2021) 11 Cal.5th 234, 249 ["dependent children have a critical interest in avoiding unnecessary delays to their long-term placement"]; *In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [children have a "compelling right[] . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child"].)

---

[3] Because we must remand for the juvenile court to enter ICWA findings and orders, we will not consider here whether parents have forfeited their claim of error by failing to raise it in the juvenile court after our denial of the writ petition.

14

The juvenile court was required to make findings as to the applicability of the ICWA and its failure to do so here was an error.  (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.)  However, we do not, as father characterizes it, reverse "faulty ICWA inquiries."  We reverse the ICWA findings and orders not supported by substantial evidence.  (See *In re D.S., supra*, 46 Cal.App.5th at p. 1051.)  Because the juvenile court did not make a finding on the subject, we have no ICWA findings and orders to review and any remarks we would make on the adequacy of the Agency's inquiry and notice would be advisory.  (See *People v. Buza* (2018) 4 Cal.5th 658, 693 ["We . . . abide by . . . a ' "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more" ' "].)  Accordingly, we remand the matter for further ICWA compliance and for the juvenile court to enter an ICWA finding based on the Agency's demonstration of inquiry and notice.

DISPOSITION

The orders terminating parental rights are conditionally affirmed subject only to full compliance with the ICWA as described in this opinion. If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing. (25 U.S.C. § 1914; § 224, subd. (e).)


_____\s\_____,
Krause, J.


We concur:


\_\_\_\_\_\s\_____,
Robie, Acting P. J.


\_\_\_\_\_\s\_____,
Boulware Eurie, J.