33 Cal.Rptr.3d 893 (2005)
132 Cal.App.4th 794
In re X.V. et al., Persons Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Anthony V. et al., Defendants and Appellants.
In re X.V., a Minor, on Habeas Corpus.
Nos. D045843, D046350.
Court of Appeal, Fourth District, Division One.
September 13, 2005.
*894 Linda M. Fabian, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner Anthony V.
William Hook, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner Nancy D.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent and for Respondent.
Kathleen Mallinger, under appointment by the Court of Appeal, for Minors.
*895 McCONNELL, P.J.
In Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 251, 126 Cal.Rptr.2d 639 (Dwayne P.), this court held in a first review pertaining to notice under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) that the parents' failure to object at the juvenile court did not constitute waiver or otherwise preclude appellate review. We relied on the court's continuing sua sponte duty throughout dependency proceedings to ensure the requisite notice is given and the protections the ICWA affords Indian tribes and Indian children. In a previous appeal in this case, in accordance with Dwayne P., we conditionally reversed a judgment terminating the parental rights of Anthony V. and Nancy D. to their daughter, X.V., and remanded the matter to the juvenile court for the limited purpose of complying with ICWA notice requirements. (In re X.V., 2004 WL 2189583 (Sept. 30, 2004, D044169) [nonpub. opn.].)
The principal question here is whether the parentsdespite their failure to raise any objection at the special hearing on remand devoted to the adequacy of ICWA notices to the Bureau of Indian Affairs (BIA) and numerous Indian tribesmay raise the issue again on appeal. We hold as an apparent matter of first impression that forfeiture principles preclude a second appellate review in such a case, as further delay harms the paramount interests of dependent children in permanence and stability. The purposes of the ICWA are indeed commendable, but we do not believe Congress envisioned or intended successive or serial appeals on ICWA notice issues when, given a proper objection, they could easily be resolved during proceedings on remand for the specific purpose of determining whether proper notice was given.
On the parents' appeals, we affirm the judgment of termination of their parental rights to X.V. To the extent Anthony purports in his appeal to challenge the judgment terminating parental rights to his son, A.V., we dismiss the appeal for untimeliness. We also deny the parents' petition for habeas corpus.[1]

FACTUAL AND PROCEDURAL BACKGROUND
In April 2002 the Agency took X.V., then five months old, into protective custody and filed a petition on her behalf under Welfare and Institutions Code,[2] section 300, subdivisions (a) and (b). The petition alleged X.V. was at risk because she witnessed domestic violence between the parents and they have a history of drug abuse. Anthony advised the Agency he had Sioux and Blackfeet heritage but was not a registered member of a tribe. The Agency did not notify the BIA or any Indian tribe of the proceedings, but at the detention hearing the court nonetheless found the ICWA inapplicable.
In May 2002 the court made a true finding on the petition, removed X.V. from parental custody and ordered family reunification services. In August 2002 Nancy gave birth to a boy, A.V. She was incarcerated at the time for spousal abuse and assault with a deadly weapon. The following month, the court declared A.V. a dependent child and placed him in foster care.
In X.V.'s case, the court terminated reunification services at the 18-month date in *896 October 2003 and scheduled a permanency planning hearing under section 366.26. Anthony had tested positive for drugs, but denied substance abuse, and Nancy was unwilling to live separately from him.
In April 2004 the court terminated the parents' rights to X.V. and selected adoption as the preferred permanent plan. Nancy appealed the judgment, and she, X.V. and the Agency stipulated to reversal because the Agency did not comply with ICWA notice requirements. We conditionally reversed the judgment and instructed the court to direct the Agency to provide proper ICWA notice to the BIA and any appropriate tribes. We also ordered the court to reinstate the judgment if, after receiving notice, no tribe intervened. (In re X.V., 2004 WL 2189583 (Sept. 30, 2004, D044169) [nonpub. opn.].)
At a hearing in October 2004 the court ordered the Agency to provide proper ICWA notice. An Agency social worker interviewed the paternal grandmother, and she reported possible Cherokee, Sioux and Blackfeet heritage. The Agency sent separate notices for each child to the BIA, fifteen Sioux tribes, three Cherokee tribes, the Prairie Island Community and the Blackfeet tribe.
On November 4, 2004, the court held A.V.'s permanency planning hearing. The court found ICWA notice was given as required by law, A.V. is not an Indian child and ICWA is inapplicable. The court terminated parental rights to A.V. The parents did not attend the hearing or raise any objection through their counsel to the ICWA findings. Further, they did not appeal the judgment.
On December 15, 2004, the court held a special hearing on the ICWA issue in X.V.'s case. The parents did not attend, but they were each represented by counsel. The paternal grandmother, maternal grandparents and other relatives attended. Four tribes had responded that X.V. was not eligible for enrollment, and the BIA stated it could not determine on the information provided that X.V. is an Indian child within the meaning of the ICWA. The court found notice was given in accordance with the ICWA, X.V. is not an Indian child and the ICWA is inapplicable. The court asked whether there was any objection to the findings, and X.V.'s counsel and Nancy's counsel stated they had no objection. Anthony's counsel said nothing at the hearing. The court reinstated the previous judgment terminating parental rights to X.V.

DISCUSSION

I

Jurisdictional Issue
Preliminarily, we note that in his appeal Anthony purports to challenge the termination of his parental rights to both X.V. and A.V.[3] Anthony, however, did not timely appeal the November 4, 2004, judgment terminating his rights to A.V. He appealed the December 15, 2004, judgment, naming both X.V. and A.V., but it pertains only to the termination of parental rights to X.V.
A judgment terminating parental rights is appealable under section 395, and our jurisdiction to review such a judgment is contingent on a timely notice of appeal. *897 (In re Jonathon S. (2005) 129 Cal.App.4th 334, 340, 28 Cal.Rptr.3d 495.) Accordingly, we lack jurisdiction to review the court's judgment terminating parental rights to A.V. and we dismiss Anthony's appeal as to him.

II

ICWA Notice

A
Anthony and Nancy contend in their appeals that the termination of their parental rights to X.V. must be reversed because of irregularities in the ICWA notices. The record on appeal does not reveal the problems, and thus the parents also petition for a writ of habeas corpus pertaining to both X.V. and A.V. and submit supporting evidence.[4]
Anthony submitted a declaration by the paternal grandmother, which stated she told the social worker in September 2004 that her mother, Velia S., told her she had Blackfeet, Sioux and Cherokee Indian heritage from her father, Jesus Mendoza. The paternal grandmother further stated she told the social worker that her paternal great-great-grandmother, Trudy Little, was half Cherokee. The Agency's ICWA notices, however, referred to Velia as "Delia" and to Jesus Mendoza as "Jesse" Mendoza, and as to Little stated the "family believes she was 3% Cherokee."
The printed form the Agency used to send notice to the Indian tribes stated that if Cherokee ancestry from Oklahoma was alleged, "the name of a relative must be provided who might have been enrolled in the final roll prepared in 1906 by the Dawes Commission (referred to as the `1906 Final Roll')," and if Cherokee ancestry from another state was alleged, to prove descendency "one must be related to a person listed on the Roll of 1924 for the Eastern Band of Cherokees." The form asked, "Do you know the name of any Indian relative that was alive in 1906 or 1924 and might have been listed on either the 1906 Final Roll or the Roll of 1924?," to which the Agency checked the box marked "Unknown." The paternal grandmother's declaration stated the social worker did not ask her whether any of the relatives she mentioned were alive in 1906 or 1924.
The Agency contends "California courts should draw the line someplace," and thus the parents may not challenge the adequacy of ICWA notice a second time when they failed to raise any objection at the special hearing on remand. Whether the parents may raise the issue again at this stage of the proceedings is a question of law.

B

1
"In 1978 Congress enacted the ICWA to `protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' (25 U.S.C. § 1902.) The ICWA recognizes that `"the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents."' [Citation.] `The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource. [Citation.] *898 Congress has concluded the state courts have not protected these interests and drafted a statutory scheme intended to afford needed protection.' [Citation.]" (Dwayne P., supra, 103 Cal.App.4th at p. 253, 126 Cal.Rptr.2d 639.)
The notice requirements of the ICWA are intended to ensure the tribe will have the opportunity to assert its rights to intervene in juvenile dependency proceedings irrespective of the position of the parents or state agency. (In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1421, 285 Cal.Rptr. 507.) The ICWA provides that when the court knows or has reason to know an Indian child is involved, the agency must notify the child's tribe, or if the tribe is unknown, the BIA, as agent for the Secretary of the Interior. (25 U.S.C. § 1912(a); 25 C.F.R. § 23.2 (2002).) The notice must include all known names of the child's biological parents, maternal and paternal grandparents and great-grandparents. (25 C.F.R. § 23.11(d) (2003).) In In re Louis S. (2004) 117 Cal.App.4th 622, 631, 12 Cal.Rptr.3d 110, the court held that notices containing misspelled and incomplete names, among other problems, were insufficient.
As this court held in In re Karla C. (2003) 113 Cal.App.4th 166, 178, 6 Cal.Rptr.3d 205, the ICWA notices, return receipts and responses of the BIA and tribes must be filed in the juvenile court. "No foster care placement of termination or parental rights proceeding shall be held until at least ten days after receipt of notice by the ... tribe or the [Bureau]." (25 U.S.C. § 1912(a).)

2
In Dwayne P., this court held in a writ proceeding challenging the scheduling of a selection and implementation hearing under section 366.26 that the parents could raise ICWA notice issues even though they did not appeal the jurisdictional and dispositional order in which the juvenile court addressed the ICWA issue, and they never raised the issue at the juvenile court. (Dwayne P., supra, 103 Cal.App.4th at pp. 253, 260, 126 Cal.Rptr.2d 639, citing In re Marinna J. (2001) 90 Cal.App.4th 731, 739, 109 Cal.Rptr.2d 267.) We explained that "[w]hen the court has reason to know Indian children are involved in dependency proceedings ... it has the duty to give the requisite notice itself or ensure the social services agency's compliance with the notice requirement. [Citations.] In our view, the court's duty is sua sponte, since notice is intended to protect the interests of Indian children and tribes despite the parents' inaction." (In re Dwayne P., supra, at p. 261, 126 Cal.Rptr.2d 639, citing In re Kahlen W., supra, 233 Cal.App.3d at p. 1425, 285 Cal.Rptr. 507.) We included broad language in Dwayne P., such as "[b]ecause the court's duty continues until proper notice is given, an error in not giving notice is also of a continuing nature and may be challenged at any time during the dependency proceedings," and "[t]hough delay harms the interests of dependent children in expediency and finality, the parents' inaction should not be allowed to defeat the laudable purposes of the ICWA." (Dwayne P., supra, at p. 261, 126 Cal.Rptr.2d 639.)
Dwayne P., however, concerned the parents' first appellate challenge to the adequacy of ICWA notice, whereas this case concerns the parents' second challenge after they ignored the ICWA issue at the special hearing on remand for the specific purpose of assessing the adequacy of notice. "A decision is authority only for the point actually passed on by the court and directly involved in the case. General expressions in opinions that go beyond the facts of the case will not necessarily control the outcome in a subsequent suit involving *899 different facts." (Gomes v. County of Mendocino (1995) 37 Cal.App.4th 977, 985, 44 Cal.Rptr.2d 93; Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd. (1999) 19 Cal.4th 1182, 1195, 81 Cal.Rptr.2d 521, 969 P.2d 613.)
It is undisputed that on the first appeal we remanded this case for the specific and sole purpose of affording proper notice under the ICWA; on remand the juvenile court ordered the Agency to give proper notice; the Agency obtained information on Indian heritage from the paternal grandmother and sent ICWA notices to the BIA and numerous tribes, and the ICWA notices, return receipts and responses were filed with the court; the parents did not appear at either the November 4, 2004, hearing in which their rights to A.V. were terminated or the December 15, 2004, hearing in which their rights to X.V. were terminated, but each was represented by counsel; and, neither parent raised any objection to the adequacy of the ICWA notices. At the December 15 hearing Nancy's attorney expressly consented to court's ICWA findings. Further, a number of relatives appeared at the December 15 hearing, including the paternal grandmother, and none of them raised any ICWA issue. Surely the parents' counsel, had they any interest in the matter, could have shown the ICWA notices to the paternal grandmother to see if the information she gave the Agency was accurately stated.[5]
A "reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule." (In re S.B. (2004) 32 Cal.4th 1287, 1293, 13 Cal.Rptr.3d 786, 90 P.3d 746.)[6] The appellate court has discretion to excuse forfeiture, but it should be exercised rarely and with special care. (In re S.B., at p. 1293, 13 Cal.Rptr.3d 786, 90 P.3d 746.) Because juvenile dependency proceedings "involve the well-being of children, considerations such as permanency and stability are of paramount importance. (§ 366.26.)" (Ibid.)
In balancing the interests of Indian children and tribes under the ICWA, and the interests of dependent children to permanency and stability, we conclude the parents have forfeited a second appeal of ICWA notice issues. At this point, X.V. has been in the dependency system for nearly three and a half years, during which she has had several placements. In April 2004 the court found X.V. was adoptable, but because of the earlier appeal and remand for proper ICWA notice, her permanent placement has been substantially delayed. A.V. has been in the dependency system his entire life, and he has had four caretakers.
We are mindful that the ICWA is to be construed broadly (Dwayne P., supra, 103 Cal.App.4th at p. 257, 126 Cal.Rptr.2d 639), but we are unwilling to further prolong the proceedings for another round of ICWA notices, to which the parents may again object on appeal. As a matter of respect for the children involved and the *900 judicial system, as well as common sense, it is incumbent on parents on remand to assist the Agency in ensuring proper notice is given. Here, for instance, the inadequacies in the notices, a misspelling and the apparent use of a nickname, could easily have been rectified at the juvenile court given a timely objection. Moreover, Congress's intent to not cause unnecessary delay in dependency proceedings is evidenced by the provision allowing a hearing on the termination of parental rights within a relatively short time, 10 days, after the BIA or tribe receives ICWA notice. (25 U.S.C. § 1912(a).) We do not believe Congress anticipated or intended to require successive or serial appeals challenging ICWA notices for the first time on appeal. As the Agency notes, "[a]t some point, the rules of error preservation must apply or parents will be able to repeatedly delay permanence for children through numerous belated ICWA notice appeals and writs."

3
In their petition for writ relief, Anthony and Nancy also contend reversal of the judgment terminating their parental rights is required because they presented evidence that in early December 2004, weeks after the Agency sent ICWA notices on remand, "information came" to his mother that her great-great-grandfather was Choctaw Indian. She did not share that information with the Agency, however, and thus it was not required to notify the Choctaw tribes before terminating parental rights. (In re Antoinette S. (2002) 104 Cal.App.4th 1401, 1409, 129 Cal.Rptr.2d 15.)

III

Section 387 Petition
In July 2004 the Agency placed X.V. and A.V. with the maternal grandparents, who planned to adopt both children. In December 2004 the maternal grandparents reported that Anthony and Nancy took the children on an unauthorized visit and the Agency learned Anthony was staying at their home. A relative reported that when Anthony returned with the children he smelled of alcohol and appeared intoxicated. The Agency removed the children and placed them with a nonrelative prospective adoptive family. The paternal grandmother had previously cared for X.V. for more than two years during the dependency, and she told the Agency she could be considered a backup adoptive parent.
Anthony and Nancy complain that removal of the children[7] without a section 387 petition is reversible error, as the removal occurred during the time their parental rights to X.V. were reinstated after the first appeal. Section 387, subdivision (a) provides: "An order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home ... shall be made only after noticed hearing upon a supplemental petition."
Relatives attended the December 15, 2004, hearing regarding ICWA notice, including the maternal grandparents and the paternal grandmother. Counsel for X.V. advised the court, "I believe most of the family members are more interested in what happened in the case recently regarding [X.V.] and [A.V.] That will probably be the subject of a detention hearing soon. They were removed from maternal grandparents." The court asked counsel whether "[w]e'll be getting a petition pursuant to section 387," and she responded, "yes, you will be getting a 387 probably due tomorrow." The court advised the relatives the only matter then before it *901 was ICWA notice, and it was previously unaware of the removal and expected a petition under section 387 to "elevate the level of placement." The paternal grandmother addressed the court, asserting X.V. should be placed with her pending a hearing on a petition. X.V.'s counsel suggested that the social worker notify the grandparents of a hearing, and the court found that a sensible solution as it wanted to "make sure they have the opportunity to be present."
County counsel, however, advised the court the Agency did not plan to file a section 387 petition, and a petition was unnecessary "because we were removing from an adoptive relative." County counsel said he advised one of the grandmothers there would be no such hearing.
After the hearing, the Agency submitted to the court a form entitled "Change of Placement Same Level of Care/PCC Entry." The court signed it on December 17, 2004.
The Agency contends the parents lack standing to object to the lack of a section 387 petition because their parental rights had been terminated and remand was for the sole issue of ICWA notice. We do not reach that and other procedural challenges, however, because Anthony and Nancy forfeited appellate review by not objecting at the juvenile court to the lack of a section 387 petition. At the December 15, 2004, hearing the parents' attorneys said nothing regarding the matter, even when County Counsel said the Agency did not plan to file a petition. Further, there is no suggestion that the parents' counsel later sought a special hearing to address the matter when the Agency did not file a petition. The parents may not stand idly by and raise the issue for the first time on appeal.[8]

DISPOSITION
The appeal is dismissed insofar as it concerns A.V. The judgment terminating parental rights to X.V. is affirmed and the petition for writ of habeas corpus is denied.
WE CONCUR: HALLER and IRION, JJ.
NOTES
[1] Nancy joins in Anthony's petition for habeas corpus.
[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[3] Nancy's notice of appeal of the December 15, 2004, judgment does not name A.V. Nancy joined in Anthony's opening and reply briefs and filed her own reply brief. We reject the Agency's contention Nancy's appeal is improper because she joined in Anthony's briefing. (Cal. Rules of Court, rule 13(a)(5); In re Harmony B. (2005) 125 Cal.App.4th 831, 835, 23 Cal.Rptr.3d 207; In re Alyssa F. (2003) 112 Cal.App.4th 846, 850, 6 Cal.Rptr.3d 1; In re Brittany K. (2002) 96 Cal.App.4th 805, 808, 117 Cal.Rptr.2d 813.)
[4] The Agency contends a writ of habeas corpus is not an appropriate means of raising an ICWA notice issue, and it is particularly inappropriate as to A.V. because Anthony did not timely appeal the judgment terminating his parental rights to A.V. Given our holding in the Agency's favor on the merits, however, we are not required to reach the procedural issues.
[5] The parents do not raise an ineffective assistance of counsel argument.
[6] In In re S.B., supra, 32 Cal.4th at page 1293, footnote 2, 13 Cal.Rptr.3d 786, 90 P.3d 746, the court explained: "Although the loss of the right to challenge a ruling on appeal because of the failure to object in the trial court is often referred to as a `waiver,' the correct legal term for the loss of a right based on failure to timely assert it is `forfeiture,' because a person who fails to preserve a claim forfeits that claim. In contrast, a waiver is the `"intentional relinquishment or abandonment of a known right."' [Citation.]"
[7] Again, however, the parents' appeals pertain only to X.V.
[8] In March 2005 the court granted the paternal grandmother's application for de facto parent status, which may have given her appellate rights (In re Miguel E. (2004) 120 Cal.App.4th 521, 539, 15 Cal.Rptr.3d 530), but time to appeal the December 15, 2004, judgment had expired and no one requested a special hearing on the section 387 matter from which an appeal may have been taken. The paternal grandmother and other relatives have no standing here, and they have not asserted any such right.