Filed 6/28/24  In re B.F. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re B.F., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082541 |
| Plaintiff and Respondent, | (Super. Ct. No. INJ014318) |
| v. | OPINION |
| J.F., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona Nemat, Judge.

Affirmed.

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Julie K. Jarvi, Deputy

County Counsels, for Plaintiff and Respondent.

Jill Smith, under appointment by the Court of Appeal, for Defendant and

Appellant.

1

# I.

# INTRODUCTION

This is a second appeal by J.F. (Father) involving the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).[1] In his first appeal, case No. E079928, we conditionally reversed the juvenile court's legal guardianship order as to Father's daughter B.F. and remanded the matter for the Riverside County Department of Public Social Services (DPSS) and the court to comply with its duty of initial inquiry under state law implementing the ICWA. In this appeal, Father, once again, contends that upon remand, neither DPSS nor the juvenile court complied with the ICWA and related state ICWA statutes because no inquiry was made of some known relatives, and thus there is insufficient evidence to support the court's finding ICWA did not apply.[2]

We conclude Father forfeited his objection in this appeal to ICWA inquiry compliance, because it was raised in his previous appeal, with a conditional remand to correct the ICWA deficiencies, and Father failed to object again to ICWA compliance in the lower court during the remittitur hearings. We also find any error on remand was harmless. We therefore affirm the finding that ICWA does not apply and the legal guardianship order as to B.F.

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[2] A.M. (Mother) is not a party to this appeal.

II.

FACTUAL AND PROCEDURAL BACKGROUND[3]

On April 13, 2020, DPSS filed a petition on behalf of B.F. and her half-sisters R.N. and E.M. pursuant to Welfare and Institutions Code[4] section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse) based, in part, on Mother's extensive history with DPSS and of abusing controlled substances, Mother's boyfriend having placed a hidden camera in the family bathroom, Mother's knowledge her boyfriend had a sexual addiction and had allowed him to supervise the girls, Father's mental health issues, and Father's history of abusing controlled substances and with DPSS. The girls had different fathers, and at the time, R.N. was 15 years old, B.F. was nine years old, and E.M. was five years old.[5]

According to the ICWA-010(A) inquiry form attached to the petition, neither parent gave reason to believe B.F. is or may be an Indian child. On February 27, 2020, Mother denied having any Native American ancestry. On April 9, 2020, Father denied having any Native American ancestry.

---

[3] A summary of the factual and procedural background up until the matter was remanded to the superior court is taken from Father's first appeal, case No. E079928 (*In re B.F.* (April 18, 2023, E079928 [nonpub. opn.].)

[4] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[5] B.F.'s half-sisters are not subjects of this appeal.

The girls were taken into protective custody on April 10, 2020. Mother reported that there were no family members to consider for placement other than E.M.'s father. R.N. and B.F. were placed into foster care, while E.M. remained in her father's custody.

The detention hearing was held on April 14, 2020, which was conducted telephonically due to the pandemic. Mother's counsel informed the juvenile court that Mother had no Native Indian heritage and that Mother had filled out an ICWA-020 form that was ready to email to the court. The court asked that Mother's counsel bring the form to the next court hearing. Father's counsel also informed the court that Father had no Native American heritage. The juvenile court directed the parents to submit an ICWA-020 form for the next hearing date and found that "based on the information currently known," ICWA did not apply. The court also found that DPSS had conducted a sufficient inquiry regarding whether the child may have Indian ancestry and that ICWA did not apply.

On April 23, 2020, Mother denied having any Native American ancestry. Father made himself unavailable to the social worker, as such the social worker was unable to inquire of Father as to his Native American heritage. Mother reported that her parents were deceased. She claimed the maternal grandmother committed suicide when she was 31 years old and she (Mother) was 15 years old. Mother had two sisters and one brother and a relationship with her brother. She spoke with her brother on the telephone at least once a month. Mother claimed that she had no local family members, but also reported that the family members that were local were not good role models for her children.

At a hearing on June 16, 2020, a maternal aunt appeared at the hearing and indicated that she was interested in placement of the children in her care.

At the contested jurisdictional/dispositional hearing on August 19, 2020, the juvenile court found that ICWA did not apply. The court also found that a sufficient inquiry had been conducted regarding whether the child may have Native American ancestry, and that B.F. was not an Indian child. The court found true the allegations in the second amended petition and declared B.F. a dependent of the court. Father was denied reunification services. The parents were ordered to disclose to DPSS the names, residency, and any known identifying information of any maternal and paternal relatives. The court further determined that DPSS had made "diligent efforts to identify, locate, and contact the child's . . . relatives, except those determined to be inappropriate to contact due to their involvement with the family or domestic violence."

A second cousin was contacted about relative placement, but she stated that she did not wish to have placement of B.F. and R.N. An older half-sister of R.N.'s was also contacted about placement, but R.N. did not want to be placed with her.

On September 23, 2020, May 28, 2021, December 22, 2021, and June 15, 2022, Mother denied having any Native American ancestry or tribal affiliation. On October 5, 2020, May 19, 2021, December 22, 2021, and June 20, 2022, Father denied having any Native American ancestry or tribal affiliations.

B.F. was content with her current placement and wanted to remain with her caregivers as her "'forever home.'" She was thriving in her placement as indicated by her improvement in behaviors and demeanor. She, however, desired to continue to have visitation with her mother and Father. She visited with Father once a month and looked forward to seeing him. Mother and Father did not provide any relatives for placement of B.F. several times when asked by the social worker. B.F.'s caregiver was willing to provide permanency in the form of legal guardianship.

On March 10, 2022, the juvenile court found that ICWA did not apply to B.F.

DPSS recommended that the juvenile court establish legal guardianship with B.F.'s caregivers. On September 20, 2022, the juvenile court ordered B.F.'s permanent plan to be legal guardianship and terminated the dependency. The parents were ordered to have visitation a minimum of twice a month for two hours each as directed by the legal guardians.

Father subsequently appealed. He argued DPSS failed to comply with its duty of inquiry with respect to ICWA and therefore there was insufficient evidence to support the juvenile court's finding that ICWA did not apply. (*In re B.F.*, *supra*, E079928.) We agreed, conditionally reversed the legal guardianship orders, and remanded the matter for ICWA compliance. We explained the error was not harmless because the record indicated (1) the parents had not filed an ICWA-020 form, (2) the juvenile court had not personally inquired of the parents of their possible Indian ancestry at their first appearance, (3) DPSS had not inquired of any maternal family members, such as

6

Mother's sisters and brother, whether they had reason to know if B.F. might have Indian ancestry, (4) DPSS had not inquired of a second maternal cousin and R.N.'s older half-sibling, and (5) DPSS had not inquired of Father concerning his relatives. (*In re B.F.*, *supra*, E079928.)

Following remand, on June 27, 2023, the juvenile court reappointed the attorneys for the parents and ordered DPSS to complete a further ICWA inquiry.

DPSS made contact with Father on July 26, 2023. Father denied having any Native American ancestry or tribal affiliation, and stated, "'no never had any of that.'" Father then ended the call without further discussion.

At a hearing on July 27, 2023, the juvenile court conducted an ICWA inquiry of Father.[6] In response to the court's query, Father stated that his mother's grandmother (the child's great, great grandmother) was a Cherokee Indian. When the court asked Father whether he had further information, he stated his mother's last name and noted that his mother was adopted. The court continued the hearing to August 17, 2023, for DPSS to contact Father to conduct a further ICWA inquiry and to obtain additional information so they could contact the Cherokee Nation.

DPSS attempted to contact Father and Mother on August 10, 2023, to follow up with the ICWA inquiry but was unsuccessful. DPSS made contact with Father on August 11, 2023. At this time, Father stated that he was not registered with or affiliated with any tribe, but claimed his "mother's biological mother had affiliations with Cherokee Nation

---

[6] Mother was not present in court.

7

of Oklahoma." He provided DPSS with his mother's name (G.B.) and alias names (G.P.K. and G.F.) and date of birth (December 26, 1925). He noted that his mother, who was deceased, was adopted and that the Native American ancestry was through her biological mother. He did not know the name of his biological grandmother, but he assumed her last name was "Bash." He had no other information regarding Native American ancestry for his family, and he did not know of any other family members having affiliations with Native American tribes. He provided the names and dates of birth of his brother and sister. He stated that his brother was born on March 30, 1960, and his sister on October 5, 1947, but he had no contact information for them as he had not spoken with them since their mother's passing. He denied that anyone in his family had ever been registered with a tribe as far as he knew, as his mother, "'did not like to speak about it.'"

DPSS also made contact with Mother on August 11, 2023. Mother again denied having any Native American ancestry or tribal affiliation in her family. DPSS made contact with Mother again on August 16, 2023, to further inquire about Native American ancestry or tribal affiliations for maternal relatives. Mother explained that her three siblings were not of blood relation because she was adopted as a child. She noted that one sister (D.A.) was deceased and the whereabouts of her other sister (K.A.) were unknown. She only remained in contact with her brother, E.A. (the child's maternal uncle), from time to time. DPSS noted that Mother had no blood-related family members available to "make determination for linkage to Native American Ancestry."

8

On August 16, 2023, DPSS made contact with maternal uncle E.A. E.A. reported that he did not know of any Native American ancestry or tribal affiliations in his immediate family. He, however, noted that there "may be tribal affiliations" for his grandmother (C.A.), but he was unsure of which tribes and he did not have her birthdate. He further stated that his grandmother was deceased and there were no other family members available to speak with, "as a large portion of his family has unfortunately passed."

At the scheduled August 17, 2023, hearing, the juvenile court directed DPSS to send notices to the Cherokee tribes. On this same day, DPSS sent an informal ICWA inquiry to the Cherokee Nation of Oklahoma (Cherokee Nation), the Eastern Band of Cherokee Indians (Eastern Band), the United Keetoowah Band of Cherokee Indians (United Keetoowah Band), and the Bureau of Indian Affairs (BIA) and notified them of the dependency proceedings. The informal inquiry noted all the known names and dates of birth for the paternal relatives and the relevant ICWA information provided by Father and Mother.

On August 18, 2023, the Cherokee Nation responded that B.F. was not an Indian child based on the information provided. The United Keetoowah Band also responded and indicated that B.F. was not an Indian child.

On September 26, 2023, the matter was continued to allow for the ICWA noticing process to be completed as DPSS was waiting for a response back from the Eastern Band. The matter was continued to October 30, 2023.

9

At the October 30, 2023, hearing, DPSS's counsel noted the matter was continued to allow a response back from the Eastern Band and that it had been over 60 days since informal inquiry had been sent. DPSS's counsel asked the juvenile court to find ICWA did not apply as to that tribe and the child, and to reinstate the prior orders. Father's counsel requested the court find that ICWA may apply and to continue the matter again, even though 60 days had passed. Father's counsel noted there was still one tribe that they had not heard from and believed it was important for the court to hear from them. After explaining this was the third hearing they had on the remittitur and that it had been more than 60 days since the last ICWA inquiry letter had been sent, the court found ICWA did not apply to B.F. and reinstated all prior orders. Father timely appealed.

III.

DISCUSSION

As argued in the first appeal, Father contends in this second appeal that the juvenile court and DPSS again failed to comply with ICWA by not adequately inquiring and investigating B.F.'s Native American ancestry, and thus there is insufficient evidence to support the court's finding ICWA did not apply. Father argues such deficiencies include DPSS failing to inquire of a second cousin, older half-sibling R.N., and maternal aunt I.O. who had appeared at an early hearing in June 2020. DPSS responds that Father forfeited his contention in this second appeal by failing to raise any ICWA inquiry deficiency in the court below. Alternatively, DPSS asserts the court did not abuse its

10

discretion in finding sufficient ICWA inquiry and that any error is harmless. We agree with DPSS that Father forfeited his claims in this second appeal.

"In 1978 Congress enacted the ICWA to 'protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' (25 U.S.C. § 1902.) The ICWA recognizes that '"the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents."' [Citation.] 'The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource. [Citation.] Congress has concluded the state courts have not protected these interests and drafted a statutory scheme intended to afford needed protection.' [Citation.]" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253; accord, *In re X.V.* (2005) 132 Cal.App.4th 794, 801-802 (*X.V.*).)

Therefore, Federal regulations implementing ICWA require that state courts, at the commencement of a juvenile dependency proceeding, "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a) (2022).) Under California law, the court and county child welfare department also "'have an affirmative and continuing duty to inquire whether a child,' who is the subject of a juvenile dependency petition, 'is or may be an Indian child.' [Citations.] The child welfare department's initial duty of inquiry includes 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the

11

child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (§ 224.2, subd. (b).)" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 883.) State courts must also "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a) (2022).)

Here, Father seeks reversal based on noncompliance with ICWA's inquiry requirements. DPSS argues Father forfeited his ICWA objection by not raising it at the October 30, 2023, remittitur hearing. Generally, "'[a] party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as "waiver," applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings.'" (*In re C.M.* (2017) 15 Cal.App.5th 376, 385.)

However, "[t]he generally accepted rule in dependency cases is that the forfeiture doctrine does not bar consideration of ICWA notice issues on appeal." (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1195.) But, "[w]hen a case is remanded to the juvenile court for the purpose of curing ICWA notice defects and the parent is represented by counsel at the postremand compliance hearing and counsel raises no objection to new ICWA notices, an exception to the general rule against forfeiture may apply." (*In re Z.W.* (2011) 194 Cal.App.4th 54, 64 (*Z.W.*); see also *In re Amber F.* (2007) 150 Cal.App.4th 1152, 1156; *X.V.*, *supra*, 132 Cal.App.4th at p. 804.) "Balancing the minor's interest in

12

permanency and stability against the tribes' rights under ICWA may require a different result in such a case." (*Z.W.*, *supra*, at p. 64.)

As the court in *X.V.*, *supra*, 132 Cal.App.4th at pages 804-805, explained, "We are mindful that the ICWA is to be construed broadly [citation], but we are unwilling to further prolong the proceedings for another round of ICWA notices, to which the parents may again object on appeal. . . . We do not believe Congress anticipated or intended to require successive or serial appeals challenging ICWA notices for the first time on appeal . . . '[a]t some point, the rules of error preservation must apply or parents will be able to repeatedly delay permanence for children through numerous belated ICWA notice appeals and writs.'"

In this second appeal, Father seeks reversal based on the juvenile court failing to inquire of a second cousin, half-older sibling R.N., and maternal aunt I.O. regarding their Native American ancestry, as ordered by this court. Father previously raised an ICWA inquiry challenge in his first appeal, and we agreed to reversal and remand to allow further ICWA compliance.

Because after remand from the first appeal, neither Father nor any other party at the October 30, 2023, remittitur hearing objected to DPSS's failure to inquire of these relatives or the court's finding ICWA did not apply, Father forfeited his ICWA inquiry objection here in this appeal. (*Z.W.*, *supra*, 194 Cal.App.4th at p. 64; see also *In re Amber F.*, *supra*, 150 Cal.App.4th at p. 1156; *X.V.*, *supra*, 132 Cal.App.4th at p. 804.) Furthermore, Father never even asserted in his first appeal that maternal aunt I.O. was not

contacted. After the first appeal, this case was remanded to the juvenile court for the purpose of curing ICWA inquiry defects, and Mother and Father were represented by counsel at the postremand compliance hearings. No one objected to the juvenile court's finding of ICWA compliance or that DPSS had not inquired of the above-noted relatives at the postremand hearings. Therefore, the exception to the general rule against forfeiture applies. (*Z.W.*, *supra*, at p. 64.)

Although in *Z.W.* the exception to forfeiture was based on successive appeals to ICWA notice challenges and involved termination of parental rights, whereas this case concerns successive challenges to ICWA inquiry compliance and legal guardianship, the forfeiture exception nevertheless applies here. The circumstances are sufficiently analogous. The appellants in both cases repeated the same type of ICWA objections in successive appeals and failed to object to any continuing ICWA deficiencies in the lower court before bringing the subsequent appeal. Had the appellant here, as in *Z.W.*, raised his ICWA compliance objections in the juvenile court before bringing the instant appeal, the ICWA deficiencies likely could have been addressed in the juvenile court, thus avoiding another appeal and additional delay. We, therefore, conclude as the court did in *Z.W.*, *supra*, 194 Cal.App.4th 54, and *In re Amber F.*, *supra*, 150 Cal.App.4th 1152, that the forfeiture doctrine bars Father's ICWA challenge in this appeal. Father should have called any and all ICWA inquiry deficiencies to the attention of the juvenile court. "Had an objection been made, the juvenile court could have addressed whatever deficiencies existed before" ordering legal guardianship. (*Z.W.*, *supra*, at p. 66.)

14

California courts should draw the line when parents fail to raise in the lower court the same ICWA objection again at a remittitur hearing on remand, and then appeal again based on the same objection raised in the previous appeal. "A line has to be drawn. At some point, there must be finality to the ICWA noticing process." (*Z.W.*, *supra*, 194 Cal.App.4th at p. 67; see also *X.V.*, *supra*, 132 Cal.App.4th at p. 798.) Balancing the child's interest in permanency and stability against the tribes' rights under ICWA, in *X.V.*, the court found that, "forfeiture principles preclude a *second* appellate review in such a case, as further delay harms the paramount interests of dependent children in permanence and stability. The purposes of the ICWA are indeed commendable, but we do not believe Congress envisioned or intended *successive* or *serial* appeals on ICWA notice issues when, given a proper objection, they could easily be resolved during proceedings on remand for the specific purpose of determining whether proper notice was given." (*X.V.*, *supra*, at p. 798.) The *X.V.* court therefore affirmed the judgment terminating parental rights based on forfeiture. Likewise, under the circumstances presented here, Father forfeited his objection to ICWA inquiry compliance.

Furthermore, although we need not decide the issue of ICWA compliance on the merits because Father forfeited the objection in this second appeal, we note it appears from the record that the juvenile court inquired as to whether B.F. had Native American ancestry and DPSS made a concerted effort to investigate B.F.'s Native American ancestry by contacting the parents and the maternal uncle, and inquiring as to whether B.F. had Native American ancestry. Inquiries were also sent to the Cherokee tribes and

15

the BIA, and two of the three Cherokee tribes responded that B.F. was not a Native American tribe member or eligible for membership. In addition, it had been over 60 days since an inquiry was sent to the Eastern Band (the third tribe that had not responded).

Moreover, based on information provided by the parents, it appeared that there were no known relatives readily available for DPSS to further inquire of that would provide meaningful information concerning B.F.'s Native American ancestry. (See *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744 [we held "in ICWA cases, a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"].)[7] Father's mother was deceased, Father had no contact information for his siblings, Mother was adopted at birth, and Mother's parents were deceased. Mother's siblings were not blood-related, one sister was deceased, the whereabouts of her other sister were unknown, and Mother did not identify I.O. as her sister. In any event, Mother had no blood relatives readily available for DPSS to inquire of whether B.F. has any Native American ancestry.

Further, there is no indication in the record to show I.O., the second cousin and half-sibling R.N. could provide meaningful information pertaining to whether B.F. has

---

[7] We acknowledge that the Courts of Appeal are divided on how to review ICWA inquiry errors and that our Supreme Court is poised to resolve the issue. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 611; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779-782, review granted Sept. 21, 2022, S275578.) Until the court does so, we will apply this court's decision in *Benjamin M.*

Native American ancestry. The record before us demonstrates that any readily obtainable information from the second cousin, half-sibling R.N., and maternal aunt I.O. was unlikely to shed meaningful light on B.F.'s ICWA status. (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Further, we are offered no reason in the record to believe that these relatives would have better information about B.F.'s ancestry than Mother, Father, and maternal uncle did. More likely may have been done to investigate B.F.'s ancestry but it is unlikely that any additional inquiries would result in information, other than what has already been provided, confirming that B.F. is not an Indian child and is not eligible for membership in any Native American tribe.

We are mindful that ICWA is to be construed broadly, but under the totality of the circumstances, we are unwilling to further prolong the proceedings and delay permanence for the child, for another round of ICWA inquiries, to which Father may again object by bringing a third appeal. "'At some point, the rules of error preservation must apply or parents will be able to repeatedly delay permanence for children through numerous belated ICWA notice appeals and writs.'" (*X.V.*, *supra*, 132 Cal.App.4th at pp. 804-805.) Because, at this point, B.F.'s interest in permanency and stability outweigh the tribes' potential rights under ICWA, we affirm the finding ICWA does not apply and reinstatement of the legal guardianship order.

IV.

DISPOSITION

The juvenile court's legal guardianship order as to B.F. is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.