Filed 11/26/25  In re W.C. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re W.C., <br><br> a Person Coming Under the Juvenile Court Law. | B343242 <br><br> (Los Angeles County <br> Super. Ct. No. 22CCJP00715) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> V.N., <br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tara Newman, Judge.  Affirmed.

Gino de Solenni, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

V.N. (mother) previously appealed from a juvenile court order terminating her parental rights to her minor child, W.C. In that appeal, a different panel of this court conditionally affirmed the order terminating mother's parental rights but remanded the matter with directions for the Los Angeles County Department of Children and Family Services (the Department) to comply with the inquiry requirements under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.).[1] On remand, the Department conducted an inquiry into claims of Native American heritage raised by W.C.'s parents. At the conclusion of the Department's investigation, the juvenile court determined ICWA did not apply to this case and reinstated its previous order terminating mother's parental rights to W.C.

Mother now appeals from the order reinstating the termination of her parental rights to W.C., arguing the Department failed to satisfy its duty of inquiry under ICWA. We affirm, finding mother has forfeited her claim of error by failing to raise it in the juvenile court below, and that the juvenile court's findings were supported by sufficient evidence.

As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here. Below, we discuss only the facts and history as needed to resolve—and provide context for—the issues presented on appeal.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

## FACTUAL AND PROCEDURAL BACKGROUND

I.  *Prior Appeal*

The case previously came before this court on appeal from the juvenile court's termination of parental rights to minor child W.C.  (See *In re W.C.* (Jan. 16, 2024, No. B329733) [nonpub. opn.].)  In their prior appeal, W.C.'s parents contested the merits of the juvenile court's termination of their parental rights and argued the Department had failed to fulfill its duty of inquiry under ICWA to investigate the parents' claims of potential Native American ancestry.[2]  On appeal, the Department conceded that it failed to fully discharge its duty of inquiry under ICWA.  We therefore conditionally affirmed the juvenile court's order terminating the parents' rights on the merits but remanded the matter for the limited purpose of conducting the required ICWA inquiry.

II.  *ICWA Investigation on Remand*

Upon remand, the Department conducted extensive interviews with both parents, their extended family members, and a family friend who grew up in one of the parents' family homes.  Over the course of these discussions, mother alternatively claimed she had family ties to the Cherokee, Navajo, Apache, Mescalero Apache, "Mescalero and Apache," and "Mascara Apache" tribes.  However, mother ultimately informed the juvenile court that she was only claiming potential membership in the Mescalero Apache tribe.  Specifically, she identified W.C.'s maternal great-grandfather, Benjamin C., as a member of the Mescalero Apache tribe.  Father claimed to have

---

[2]  Father was a party to the prior appeal but is not a party to the instant appeal.

3

membership in the Chiricahua Apache tribe through W.C.'s paternal great-grandfather, Geronimo C.

The Department investigated the parents' assertions and spoke with other members of the parents' respective families. This included talking to all the individuals identified by the parents as being the historians for their respective families. These individuals were not able to corroborate any of the parents' assertions of Native American ancestry with additional information. One paternal aunt told the Department that her grandfather would sometimes claim to have "Native blood" when he was drinking tequila. The family historian for mother's side of the family similarly reported that any claim of Native American ancestry was just a story that W.C.'s maternal grandfather would tell when he was drunk.

In April 2024, the juvenile court ordered the parents to submit new ICWA forms to the Department and directed the Department to investigate the parents' claims of Native American ancestry. The parents subsequently submitted several forms detailing their claims of Native American ancestry through Benjamin C. and Geronimo C. One of these forms—an ICWA Family Background Information form—contained a typographical error. The form provides boxes for parties to fill in information for various family relatives. One such box is confusingly mislabeled as the area to provide the information for "Mother's Biological Grandfather (Child's paternal Great-grandfather)." This typographical error in the form makes it unclear whether the identifying information entered there was for an individual on the maternal or paternal side of the child's family. In the form submitted by mother, she used that space to provide the biographical information for paternal great-grandfather Geronimo C.

4

In May 2024, the Department used the information submitted by the parents to prepare an ICWA notice that it served on parents, the Bureau of Indian Affairs (BIA), and all federally registered Apache tribes, including the Mescalero Apache tribe.[3]  In doing so, the Department made it clear that it was serving the notice on the tribes as a precaution, and there was no reason to know that W.C. was a member of any tribe.

The Department's ICWA notice was prepared using the ICWA-030 form approved by the Judicial Council of California.  The ICWA notice and ICWA Family Background forms were formatted similarly, with nearly identical boxes provided to fill in information about specific relatives.  The form used for the notice does not include the same typographical error that was present in the family background form where one box was confusingly mislabeled.  Instead, the notice form properly labeled the relevant box as containing the information for "Mother's Biological Grandfather (Child's Maternal Great-grandfather)."  However, in filling in the box, the Department provided the biographical information for Geronimo C. taken from mother's background form.  As a result, the notice gave the erroneous impression that Geronimo C. was W.C.'s maternal relative rather than his paternal relative.

III.  *ICWA Hearing*

After several continuances to allow the tribes additional time to respond to the Department's ICWA notice, the juvenile court held a hearing in November 2024 to determine whether the Department had satisfied its

---

[3]      In addition to the Mescalero Apache tribe, the notice was also served on the Fort Sill Apache Tribe of Oklahoma, the Apache Tribe of Oklahoma, the Jicarilla Apache tribe, the San Carlos Apache tribe, the Tonto Apache tribe, the Apache Nation, and the White Mountain Apache Tribe of the Fort Apache Reservation.

obligations under ICWA and whether ICWA applied to the case. The court noted that all but two tribes responded to the Department's notices with statements that W.C. was not eligible for enrollment or otherwise an "Indian child based on their records." The two remaining tribes—the Jicarilla Apache and the San Carlos Apache—did not respond despite the Department's repeated efforts.[4] The juvenile court acknowledged that the San Carlos Apache tribe said it did not have enough information to process the Department's notice, but stated there was "not any additional information available" that could be provided to the tribe.

The Department asked the juvenile court to find that ICWA does not apply. The Department argued that it "has made more than reasonable efforts . . . to try to get responses and at this time there's no reason to believe that ICWA applies in this case."

Mother disagreed, arguing that "The ICWA inquiry is not complete as there are still two outstanding ICWA responses as noted in the addendum report, and I believe that the Department can possibly assist the tribe—the outstanding tribes by giving the contact information to the mother and maybe they can speak to them directly. [¶] Thus, we are objecting to the court finding that the Department made all efforts to comply with the ICWA reversal and objecting to the court maintaining the order of termination of parental rights for mother." Father joined in mother's argument without raising any additional objections. No party claimed the notices sent to the

---

[4] The Department's report to the juvenile court noted that the San Carlos Apache tribe stated they would not process the Department's ICWA notice "because the notice[] only went as far as the paternal grandparents." The tribe informed the Department that they would "need more information that extends to the paternal great grandparents in order to process the inquiry."

tribes were deficient, erroneous, or otherwise fell short of satisfying the Department's burden of inquiry under ICWA.

The juvenile court determined the Department "made reasonable and diligent efforts to identify if [ICWA] applies" and "there's nothing more that can be done by the Department to force tribes to provide responses." The court also gave the parents permission to contact the tribes, stating "If the parents had any information or wanted to reach out to the tribes themselves, they can do that, but the Department has contacted these tribes several times, received overwhelming response from the majority of the tribes contacted that the minor is not an Indian child pursuant to [ICWA]." The court concluded there was no reason to know or believe that ICWA applied to this case and reinstated its previous order terminating mother's parental rights to W.C.

Mother timely appealed. On appeal, mother contends the Department's ICWA inquiry was deficient because the notice it sent to the BIA and various tribes incorrectly identified Geronimo C. as W.C.'s maternal relative.

## DISCUSSION

I. *Legal Standards*

Congress enacted ICWA "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture.'" (*In re Levi U.* (2000) 78 Cal.App.4th 191, 195; see also 25 U.S.C. § 1902.) "ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes. [Citations.] In 2006, California adopted various procedural

and substantive provisions of ICWA." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) "ICWA also describes a preference for placement of Indian children with their extended families, members of their tribe, or other Indian families. [Citations.]" (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1098 (*Kenneth D.*).)

Under California law, the juvenile court and the Department have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.) "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552.)

The duty of initial inquiry includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).)

If the Department has "reason to believe" that an Indian child[5] is involved, "further inquiry regarding the possible Indian status" of the child is required. (§ 224.2, subd. (e).) This further inquiry includes contacting the relevant tribe or tribes and "sharing information identified by the tribe as

---

[5]     An "Indian child" is a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (§ 224.1, subds. (a), (b); 25 U.S.C. § 1903(4).) "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).)

"The sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child." (*In re D.S., supra,* 46 Cal.App.5th at p. 1049.) "If the inquiry establishes a reason to know an Indian child is involved, notice must be provided to the pertinent tribes.[6] (§ 224.3, subds. (a), (b); 25 U.S.C. § 1912(a).) The notice must include enough information for the tribe to 'conduct a meaningful review of its records to determine the child's eligibility for membership' [citation], including the identifying information for the child's biological parents, grandparents, and great-grandparents, to the extent known [citations]." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1133 (*Dezi C.*).) Alternatively, the juvenile court may "make a finding that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child, so ICWA does not apply." (*Id.* at p. 1134.)

---

[6]     By statute, a "reason to know" exists when one of the following conditions are met:  "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;]  [¶]  (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village . . . [;]  [¶]  (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;]  [¶]  (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;]  [¶]  (5) The court is informed that the child is or has been a ward of a tribal court[;]  [¶]  (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

Our California Supreme Court has said that a juvenile court's "fact-specific" determination that an ICWA inquiry "is adequate, proper, and duly diligent" is "'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] '"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case."'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

"If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*Dezi C., supra*, 16 Cal.5th at p. 1141.) However, "'the less developed the record, the more limited that discretion necessarily becomes. When . . . the court's implied finding that the agency's inquiry was proper, adequate, and duly diligent rests on a cursory record and a patently insufficient inquiry that is conceded, the only viable conclusion is that the finding is unsupported by substantial evidence and the court's conclusion to the contrary constitutes a clear abuse of discretion.'" (*Kenneth D., supra*, 16 Cal.5th at pp. 1101–1102.)

II.     *Forfeiture*

On appeal, mother contends the Department failed to satisfy its duty of inquiry under ICWA because the notice it mailed to the tribes and BIA incorrectly identified Geronimo C. as W.C.'s maternal relative rather than his paternal relative. The Department argues mother forfeited this claim of

10

error by failing to raise it in the juvenile court below.  We agree that mother has forfeited this issue.

"[T]he forfeiture doctrine applies in dependency cases."  (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 345 (*Anthony Q.*).)  Under the forfeiture rule, arguments that were not raised below may not be asserted for the first time on appeal.  (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590.)  As a result, we "ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court."  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.  [Citation.]" (*Ibid.*)  Although an appellate court has the discretion to excuse forfeiture, this discretion "should be exercised rarely and only in cases presenting an important legal issue."  (*Ibid.*)

Under ordinary circumstances, the "forfeiture doctrine does not bar consideration of ICWA notice issues on appeal."  (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1195.)  However, courts have recognized that the forfeiture rule applies to claims of ICWA error in a parent's second appeal where the first appeal resulted in a remand for ICWA compliance.  (See *In re X.V.* (2005) 132 Cal.App.4th 794, 804–805 [holding mother forfeited challenge to inaccuracies in ICWA notice by failing to object to notices following previous remand for ICWA compliance]; *In re Amber F.* (2007) 150 Cal.App.4th 1152, 1155–1156 (*Amber F.*) [same]; *In re N.M.* (2008) 161 Cal.App.4th 253, 269 [same].)

Mother attempts to distinguish *In re X.V.* and *Amber F.*, arguing that, unlike the parents in those cases, her counsel below did object to the juvenile court's ICWA finding on remand.  We are not persuaded.  As set forth above, the only objection raised to the juvenile court's ICWA finding on remand was

that it was premature to determine that ICWA does not apply because two of the tribes contacted did not provide a formal response to the notices sent by the Department.  There is no question that mother preserved this argument regarding the two outstanding responses for appellate review.  However, mother chose to abandon this argument on appeal by failing to raise it in her opening brief.  (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 529 [a party "effectively concedes" an issue by failing to address it in briefing]; *People v. Bouzas* (1991) 53 Cal.3d 467, 480 [an argument is conceded by failure to address it on appeal].)

Instead, the only claim of error raised on appeal is the typographical error in identifying Geronimo as a maternal relative rather than a paternal relative.  This purported error was never raised by the parties below or otherwise brought to the juvenile court's attention.

We note that *In re N.M.* rejected a similar attempt to avoid a finding of forfeiture.  There, the appellate court determined that the parents forfeited any objection to the adequacy of ICWA notices because they "objected only to the *timing* of the hearing without objecting to the *adequacy* of the ICWA notices." (*In re N.M., supra,* 161 Cal.App.4th at p. 269.)  Indeed, it is settled that to properly preserve an issue for appeal, an objection must state the specific "ground or grounds upon which the objection is based."  (*In re E.A.* (2012) 209 Cal.App.4th 787, 790; accord *Anthony Q., supra*, 5 Cal.App.5th at p. 345 [the failure to object "on a specific ground generally forfeits a parent's right to pursue that issue on appeal"].)  Applying these principles, we conclude that mother's objection to the sufficiency of the tribes' responses to the Department's notice was inadequate to preserve any and all potential claims of error in the Department's ICWA inquiry.  Mother has therefore

12

forfeited any claim of error with respect to the sufficiency of the Department's notice.

Mother's counsel was in possession of the Department's notice for approximately six months before the juvenile court determined that ICWA did not apply. In that time, the parties appeared in the juvenile court at least three times to address the issue of ICWA compliance. Mother had multiple opportunities to bring any deficiencies in the notice to the juvenile court's attention. If she had done so, the juvenile court could have promptly dealt with the issue. "[W]e do not believe Congress envisioned or intended *successive* or *serial* appeals on ICWA notice issues when, given a proper objection, they could easily be resolved during proceedings on remand for the specific purpose of determining whether proper notice was given." (*In re X.V.*, *supra*, 132 Cal.App.4th at p. 798.)

As mother has forfeited the only claim of error she now raises on appeal, we affirm the juvenile court's order terminating her parental rights.

III.    *Juvenile Court's Determination Was Supported by Sufficient Evidence*

The same result would follow if we were to reach the merits of mother's argument. It is true that the ICWA notices sent by the Department incorrectly identified Geronimo C. as W.C.'s maternal relative rather than his paternal relative. However, the standard for ICWA inquiry is not perfection. Instead, the question is whether the juvenile court reasonably concluded that the Department's ICWA inquiry was adequate, and whether substantial evidence supported the finding that W.C. is not an Indian child under the statutory framework. (*Dezi C., supra*, 16 Cal.5th at p. 1141; *Kenneth D., supra*, 16 Cal.5th at pp. 1101–1102.) The record here amply supports the juvenile court's finding that ICWA does not apply to this case.

13

It is undisputed that, following remand from our previous decision, the Department made repeated efforts to question W.C.'s immediate and extended family in an effort to gather information about W.C.'s possible Native American heritage. Mother does not identify any individuals whom the Department failed to interview. It is also undisputed that all of the information provided by those family members was included in the notice the Department sent to the BIA and registered Apache tribes.

On appeal, mother does not explain how the misidentification of Geronimo C. as a maternal relative of W.C., rather than a paternal relative, could have impacted the tribes' search for records relating to W.C. or Geronimo C. Mother does not suggest that certain tribes only acknowledge tribal membership if a child has tribal ancestry through the paternal side of the family. We have before us no basis to suspect that any tribe's eligibility determination as to W.C. turned on whether Geronimo C. was identified as W.C.'s maternal or paternal great-grandparent.

Mother accurately notes that the San Carlos Apache tribe stated it would not perform a search without more information regarding the paternal side of the family. However, mother has failed to show that the Department or juvenile court had a "reason to believe" or "reason to know" that W.C. was a member of the San Carlos Apache tribe. As set forth above, the Department's obligation to contact tribes is triggered only by such a reason to believe that the child may be a member of that tribe. (§ 224.2, subd. (e)(2)(C).) Similarly, the Department's obligation to provide a formal ICWA notice to a tribe is only triggered where there is a "reason to know" the child may be a member of that tribe. (§ 224.3, subds. (a), (b); 25 U.S.C. § 1912(a).) On appeal, mother has not shown there was any reason to believe or know that W.C. was a member of the San Carlos Apache tribe. Absent such a

14

reason to believe or know, the Department was under no obligation to contact the San Carlos Apache tribe or provide the tribe with a formal ICWA notice.

Here, the juvenile court's determination that the Department's ICWA inquiry was adequate is supported by the Department's detailed reports documenting the inquiry the Department made of mother, father, and all relevant extended family members. Similarly, the juvenile court's conclusion that ICWA does not apply to this case was supported by substantial evidence.

As the juvenile court's determinations were supported by sufficient evidence and record documentation, we would nonetheless affirm the termination of mother's parental rights even if she had not forfeited this issue on appeal.

## DISPOSITION

The order terminating mother's parental rights to W.C. is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


COLLINS, J.


TAMZARIAN, J.

15